FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2006 SEP -6  PM 1: 00

CLERK _____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| TERRY WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 105-68 |
| | ) | |
| TIMOTHY C. YOUNG, | ) | |
| | ) | |
| Defendant. | ) | |

---

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

---

Defendant in this action filed by plaintiff under Title 42, United States Code, Section 1983 has submitted a motion for summary judgment. Doc. 31. Plaintiff responded to the motion on August 15, 2006, by filing a "cross summary judgment" motion of his own. Doc. 40. For the reasons that follow, the Court recommends that defendant's motion for summary judgment be **GRANTED**, that plaintiff's "cross summary judgment" motion be **DENIED**, that final judgment be **ENTERED** in favor of defendant, and that this civil action be **CLOSED**.

I.       **BACKGROUND**

Plaintiff, an inmate currently housed at Dooly State Prison in Unadilla, Georgia, was a prisoner at Augusta State Medical Prison ("ASMP") in Augusta, Georgia, at the time of the

events alleged in his complaint.  In May 2002, plaintiff was struck by a golf cart on the grounds of ASMP.  Def. Ex. A, ¶ 7.  Plaintiff subsequently visited various physician's assistants (PA's) on three occasions between December 30, 2002, and February 20, 2003, complaining of back pain related to the golf cart incident.  Id.; Def. Ex. C at 184-87.

Plaintiff received a referral from a PA on March 25, 2003, to visit Defendant Young, a doctor employed by the Georgia Department of Corrections ("DOC").  Upon examination of plaintiff, Dr. Young noted no remarkable medical symptoms and observed that x-rays taken of plaintiff's back were normal.  Dr. Young found plaintiff's pain symptoms to be inconsistent with any objective evidence of a medical condition, and he prescribed Indocin, a pain medication, for plaintiff.  Def. Ex. A, ¶ 8; Def. Ex. C at 181.  Plaintiff subsequently visited PA's on three more occasions between April 21, 2003, and July 14, 2003, complaining of pain.  Def. Ex. A, ¶ 9; Def. Ex. C at 173, 177-78.  Plaintiff also filed two grievances complaining of his medical treatment, both of which were denied by the prison warden and by the Georgia Department of Corrections ("DOC") on appeal.  Def. Ex. D; Def. Ex. E.

On July 14, 2003, plaintiff received a referral to Dr. Norman Chutkan, a spinal specialist at the Medical College of Georgia.  In a July 30, 2003, examination of plaintiff, Dr. Chutkan found no patent physical abnormalities but did request a magnetic resonance imaging ("MRI") exam of plaintiff's lumbar spine.  Def. Ex. A ¶ 11; Def. Ex. C at 170, 247.  Medical staff performed the requested MRI on September 19, 2003.  The MRI showed moderate diffuse disk bulges at L 3-4 and L 4-5.  Def. Ex. C at 80.  On September 26, 2003, plaintiff visited a PA to receive the results of the MRI and was prescribed Tylenol and

2

Robaxin, a muscle relaxer. Id. at 168.

Plaintiff visited Dr. Chutkan again on December 17, 2003. Based on the MRI results, Dr. Chutkan diagnosed plaintiff with mild degenerative disc disease and chronic low back pain, and he recommended physical therapy. Id. at 248. After visiting a PA again on December 22, 2003, an order for physical therapy was entered for plaintiff. Plaintiff began therapy two days later. Id. at 166, 244.

Plaintiff visited Dr. Young again on February 20, 2004. Dr. Young continued plaintiff's physical therapy and his prescriptions for Tylenol and Robaxin. Def. Ex. A, ¶ 16; Def. Ex. C at 70, 110. Plaintiff visited Dr. Young on April 5, 2004, at which time an examination of plaintiff's back by Dr. Young revealed no abnormalities. Def. Ex. A, ¶ 17; Def. Ex. C at 65.

On April 16, 2004, plaintiff visited a PA complaining that his left arm had "gone dead." The PA referred plaintiff to Dr. Young, who saw plaintiff on April 19, 2004. When Dr. Young explained to plaintiff his prior course of treatment, plaintiff, according to Dr. Young, became belligerent and left the room without being examined. Def. Ex. A, ¶ 19. Plaintiff alleges that Dr. Young also said that plaintiff, who was using a cane at the time, "looked silly with a cane" and took the cane away from him.

Plaintiff subsequently filed a grievance against Dr. Young for neglecting to provide him with appropriate medical care and for taking away his cane. The prison warden denied the grievance, and the DOC denied plaintiff's appeal of the grievance. Def. Ex. F. Plaintiff filed another grievance complaining that a PA refused to provide adequate medical treatment, but the grievance was denied by the prison warden and on appeal on procedural grounds.

Def. Ex. G.

Plaintiff visited a PA on June 2, 2004, and June 21, 2004, and received prescriptions for Tylenol, Motrin and Baclofen, a muscle relaxer. Def. Ex. A, ¶ 21; Def. Ex. C at 58-59. On July 28, 2004, plaintiff visited Dr. Young for the final time. According to Dr. Young, plaintiff acted belligerently and refused to be examined. Def. Ex. A, ¶ 22. Plaintiff filed another grievance on July 30, 2004, alleging that Dr. Young refused to provide plaintiff with adequate medical care. The prison warden denied the grievance, and the DOC also denied the grievance on appeal. Def. Ex. H.

Plaintiff visited Dr. Nichols, another ASMP doctor, on August 19, 2004, September 16, 2004, and October 28, 2004. Dr. Nichols prescribed Vioxx to plaintiff on the September 16, 2004, visit. On September 30, 2004, Dr. Young, based on the newly discovered, potential negative side-effects of Vioxx and a recall ordered by Vioxx's manufacturer after warnings issued by the Food and Drug Administration ("FDA"), discontinued plaintiff's Vioxx prescription and prescribed Celebrex instead. Both Vioxx and Celebrex were commonly prescribed for pain management at that time. Def. Ex. A, ¶ 23. Celebrex is still widely used for this purpose. Id.

The DOC transferred plaintiff from ASMP on November 8, 2004. Id. ¶ 5. On November 8, 2005, plaintiff visited a neurosurgeon at the Medical College of Georgia, who examined plaintiff, found him to be suffering from no remarkable physical injuries, and recommended continued physical therapy. Def. Ex. C at 107.

In his complaint, plaintiff alleges that Dr. Young acted with deliberate indifference to plaintiff's serious medical condition during plaintiff's stay at ASMP. Dr. Young, in his

summary judgment motion, contends that plaintiff neither was afflicted with a serious medical condition nor denied medical treatment.

## II.      SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Applicable substantive law identifies which facts are material in a given case.[1] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When seeking summary judgment, the movant must show, by reference to materials on file, that there are no genuine issues of material fact to be decided at a trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark, 929

---

[1]For purposes of summary judgment, only disputes about material facts are important. That is, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

F.2d at 606-08 (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex

Corp. v. Catrett, 477 U.S. 317 (1986)).  Merely stating that the non-moving party cannot

meet its burden at trial is not sufficient.  Clark, 929 F.2d at 608.  Evidence presented by the

movant is viewed in the light most favorable to the non-moving party.  Adickes, 398 U.S.

at 157.

If the moving party meets its burden, the non-moving party must then "demonstrate

that there is indeed a material issue of fact that precludes summary judgment."  Clark, 929

F.2d at 608.  The non-moving party cannot carry its burden by relying on the pleadings or by

repeating conclusory allegations contained in the complaint.  Morris v. Ross, 663 F.2d 1032,

1034 (11th Cir. 1981).  Rather, the non-moving party must respond either by affidavits or as

otherwise provided in Rule 56 of the Federal Rules of Civil Procedure.  "The evidence of the

non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."

Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59).  A genuine issue of

material fact is said to exist "if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party."  Id. at 248.


III.   ANALYSIS

The Eighth Amendment prohibits prison officials from inflicting cruel and unusual

punishment on prisoners.  Campbell v. Sikes, 169 F.3d 1353, 1362 (11th Cir. 1999).  The

Supreme Court has held that Eighth Amendment claims have both an objective and a

subjective component: (1) the prisoner must allege a deprivation that is "sufficiently serious"

to implicate constitutional concerns and, (2) the prisoner must demonstrate that the prison

official had a "sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 297-98 (1991)). "Deliberate indifference," the requisite state of mind for all Eighth Amendment claims except excessive force, requires proof that the defendant disregarded a risk of harm of which he knew. Id. at 829, 837 (rejecting objective test and adopting subjective one).

Because a prisoner is unable to care for his medical needs as a result of his incarceration, the Eighth Amendment requires prison authorities to provide medical care for those they incarcerate. Estelle v. Gamble, 429 U.S. 97, 103 (1976). Based on this rudimentary principle, the Supreme Court concluded that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." Id. at 105. The Court noted that an official's indifference could be manifested by a "prison doctor['s] . . . [inappropriate] response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care." Id. at 104-05. The Court was careful to caution, however, that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." Id. at 106. For example, "an inadvertent failure to provide adequate medical care" does not violate a prisoner's rights. Id. at 105.

In order to succeed in a medical indifference claim, a plaintiff must satisfy both objective and a subjective components of the deliberate indifference standard. Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994), abrogated on other grounds, 536 U.S. 730, 739 n.9 (2002). To satisfy the objective component, a plaintiff must show that his medical need is serious, or that the need "has been diagnosed by a physician as mandating treatment" or "is so obvious that even a lay person would easily recognize the need for a

doctor's attention." Id. at 1187.  For the subjective component, a plaintiff must show that the defendant possessed "knowledge of the need for medical care" and displayed "the intentional refusal to provide that care." Id. at 1186.

Regarding the objective component, Dr. Chutkan diagnosed plaintiff with mild degenerative disc disease.[2]  Degenerative disc disease is a generic medical term used to describe a swelling, tearing, or degeneration of spinal discs, which can be the result of aging, lifting heavy objects, or back trauma.  WebMd, Understanding Spinal Disk Problems–Basic Information, http://www.webmd.com/content/article/65/72630.htm (visited Aug. 23, 2006).  Treatment of such spinal problems "calls for pain relief, rest, steps to reduce inflammation, and measures to restore strength and normal activity.  Except in severe cases . . . herniated discs generally heal themselves, and surgery is rarely necessary." WebMd, Disc Problems, http://www.webmd.com/content/pages/4/1661_50311.htm (visited Aug. 23, 2006).

Plaintiff's diagnosis of mild degenerative disc disease occurred on December 17, 2003.  Prior to that date, plaintiff's x-rays and clinical exams had revealed no objective abnormalities.  Thus, the Court is left to consider whether Dr. Young's evaluations of plaintiff prior to the December 17, 2003, diagnosis or Dr. Young's treatment of plaintiff after the diagnosis constituted deliberate indifference to a serious medical condition.

With respect to Dr. Young's evaluations of plaintiff prior to the degenerative disc disease diagnosis, the Court notes that other doctors and PA's examined plaintiff prior to the diagnosis and likewise found no significant abnormalities.  Plaintiff's x-rays were unremarkable and there was no objective evidence to support the subjective symptoms that

---

[2]Plaintiff does not appear to challenge Dr. Chutkan's diagnosis.

he demonstrated. Inasmuch as plaintiff's condition was deemed "mild" by Dr. Chutkan, it is not unreasonable to conclude that routine physical examinations would yield no objective signs of the presence of the condition. The Court accordingly does not find that Dr. Young acted with deliberate indifference toward plaintiff's medical condition prior to plaintiff's diagnosis.

After plaintiff's diagnosis, Dr. Young followed the recommendation of Dr. Chutkan and ordered physical therapy for plaintiff. Dr. Young also continued prescriptions for Tylenol and Robaxin. Plaintiff does not allege that he was forced to participate in any prison work activities that exacerbated his back problem. In all, plaintiff was seen by ASMP medical personnel or consulting physicians for his back pain on twenty-three occasions, five of which involved Dr. Young. Doctors and PA's continuously prescribed pain medications for plaintiff, and an order for physical therapy was filled after plaintiff's diagnosis. The Court finds that the ASMP medical personnel, including Dr. Young, provided a constitutionally acceptable level of medical care, especially considering the limited objective evidence of plaintiff's medical condition and considering the usual treatment protocal for "mild" cases of degenerative disc disease. Plaintiff's claim of deliberate indifference to a serious medical condition accordingly should fail.

Plaintiff also contends that Dr. Young acted with conscious disregard for plaintiff's medical health when he prescribed Vioxx and Celebrex to treat plaintiff's condition. Vioxx was withdrawn by its manufacturer, Merck & Co., Inc., on September 30, 2004, after the FDA issued a health advisory questioning potential side-effects of Vioxx. WebMd, Vioxx Questions and Answers, http://www.webmd.com/content/article/94/102998.htm (visited Aug. 23, 2006). While a study first announced in December 2004 suggested that the use of Celebrex may result in similar side-effects, the drug has not been pulled from the market by its

9

manufacturer, Pfizer, Inc., and is still in use today.  WebMd, <u>Jury Still Out on Celebrex Safety</u>, <u>http://www.webmd.com/content/article/100/105536.htm</u> (visited Aug. 23, 2006).

The evidence of record indicates that Dr. Young did not prescribe Vioxx for plaintiff's pain; Dr. Nichols issued the prescription.  Even if Dr. Young had prescribed the drug, the fact that the prescription was issued prior to the drug's recall date indicates that the prescribing doctor did not act with deliberate indifference to plaintiff's medical health or knowingly put plaintiff in danger of a serious medical condition.  With regard to plaintiff's Celebrex prescription, the Court notes that the drug has not been recalled and still is being prescribed for pain management today.  Questions concerning the drug's safety did not arise until after the date that Dr. Young prescribed it.  Based on these facts, the Court cannot conclude that Dr. Young acted with deliberate indifference to plaintiff's health in prescribing Celebrex for his pain.

## IV.   CONCLUSION

For the reasons stated above, defendant's summary judgment motion, Doc. 31, should be **GRANTED**.  Plaintiff's "cross summary judgment" motion, Doc. 40, should be **DENIED**.  This civil action should accordingly be **CLOSED**, and final judgment should be **ENTERED** in favor of defendant.

SO REPORTED and RECOMMENDED this _6-th_ day of September, 2006, at Augusta, Georgia

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE